UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CNA INSURANCE COMPANY,                                    PLAINTIFF
a/s/o CORNING, INC.

v.                                        CIVIL ACTION NO. 3:07-CV-141-S

HYUNDAI MERCHANT MARINE, CO.,                            DEFENDANTS
LTD.; NORFOLK SOUTHERN RAILWAY
COMPANY; BURLINGTON NORTHERN
SANTA FE RAILWAY COMPANY

## MEMORANDUM OPINION

This matter is before the court on the motion of defendants Hyundai Merchant Marine, Co.,

Ltd. ("Hyundai"), Norfolk Southern Railway Company ("Norfolk Southern"), and Burlington

Northern Santa Fe Railway Company ("Burlington Northern") (together, "Rail Defendants")

(collectively, "Defendants") for summary judgment (DN 78), and on the cross-motion of plaintiff

CNA Insurance Company ("CNA") for partial summary judgment (DN 79).  Both motions have

been fully briefed (DN 84; DN 85; DN 87; DN 88).  For the reasons that follow, Defendants' motion

will be denied and CNA's motion will be granted.

BACKGROUND[1]

This case involves an international ocean shipment contract (the "Service Contract") between

Corning, Inc. ("Corning") and Hyundai.  It is undisputed that the claims in this action are governed

by the Service Contract.

_____

[1]This case was initially brought in the United States District Court for the Southern
District of New York, where it was assigned civil action number "1:06-CV-7748".  Thereafter,
Defendants filed motions to transfer the case.  Judge Alvin K. Hellerstein granted Defendants'
motions by Summary Order and transferred the case to the Western District of Kentucky,
Louisville Division, where it was assigned to this court and given civil action number "3:07-CV-
141".

Corning and Hyundai entered into the Service Contract effective June 1, 2005 through May 31, 2006, pursuant to which Corning agreed to ship and Hyundai agreed to carry product belonging to Corning from various points of origin in the United States to various destinations in Asia. This case involves one particular shipment of 11,612 sheets of special purpose glass (the "Cargo") from Corning's manufacturing facility in Harrodsburg, Kentucky to Taiwan. Corning made shipments identical to the Cargo from Harrodsburg to Taiwan every weekday; and Corning and Hyundai had been parties to other service contracts similar if not identical to the Service Contract for several years.

Corning made arrangements for the shipment of the Cargo on February 12, 2006. Corning packaged the Cargo into twenty-four (24) wooden crates, each containing approximately 500 sheets of glass; and the crates were packaged into two 20-foot long intermodal transportation containers, each containing twelve (12) crates. Corning tendered the Cargo to Hyundai (or to Hyundai's agent) at Harrodsburg on February 21. The Cargo was transported by truck from the Harrodsburg facility to Louisville, Kentucky, where it was delivered to Norfolk Southern and transported by rail to Chicago. In Chicago, the Cargo was transferred to Burlington Northern and transported by rail to the state of Washington.

In Washington, the Cargo was interchanged to the Tacoma Municipal Beltline Railway and transported to Washington United Terminal ("WUT") in Tacoma. Upon delivery to WUT, the Cargo was intended to be loaded aboard the ocean vessel "Hyundai Duke" for continued transportation to Taiwan. However, on March 7, an employee of WUT advised Hyundai that the containers were "bulging," or appeared to be damaged, and therefore the containers were not loaded aboard the ship as originally planned. Instead, the containers and crates were inspected and Corning

was notified of the observable damage.  Per Corning's request, the 24 crates of glass were transloaded into two (2) different shipping containers and returned to Harrodsburg via the same route and by the same modes that they were sent to WUT.  Corning subsequently determined the Cargo to be a total loss with no secondary use and now CNA, as subrogee of Corning, seeks full recovery from Defendants.

CNA alleges causes of action against Defendants sounding in breach of contract, bailment, and negligence, as encompassed by the Carmack Amendment to the Interstate Commerce Act of 1887 (the "Carmack Amendment").[2]  Generally, and in part, the Carmack Amendment imposes liability for the actual loss or injury to property caused by rail carriers.  It is undisputed that the Cargo was damaged while in the possession of one or both Rail Defendants.  CNA seeks damages in the amount of $664,670.88 for the loss of the Cargo.

Defendants argue that their liability is limited by the Carriage of Goods by Sea Act ("COGSA"),[3] the terms of which are incorporated by reference into the Service Contract through Hyundai's Regular Form Bill of Lading ("Bill of Lading").[4]  Generally, and in part, COGSA limits

---

[2]49 U.S.C. § 11706.  While Defendants argue preliminarily that CNA has failed to "explicitly plead claims to the Carmack Amendment," *Carr v. Olympian Moving & Storage*, 2006 U.S. Dist. LEXIS 57763, *7 (N.D. Ohio No. 1:06-CV-679, June 6, 2006), the court is satisfied that CNA's Complaint clearly alleges comprehensive claims under the Carmack Amendment as opposed to individual common law causes of action.  CNA readily concedes that it has no state law claims against Defendants.  Accordingly, the court will restrict its findings herein to the issue of limitation of liability.

[3]46 U.S.C. § 30701 note (2006).  COGSA was classified to former 46 U.S.C. §§ 1300-1315 prior to the general revision and enactment into positive law of Title 46, Shipping, by Pub. L. 109-304, Oct. 6, 2006, 120 Stat. 1485, but was not repealed, omitted, or restated by Pub. L. 109-304.

[4]Hyundai produced two different versions of its Bill of Lading in discovery, bearing Bates Stamp numbers HMM00042 through HMM00051 and HMM00088 through HMM00106. However, Defendants have submitted an unrefuted affidavit stating that the Bill of Lading

the liability of an ocean carrier for any loss or damage to cargo to $500 per package during the time the cargo is loaded aboard a ship unless the shipper has declared a greater value of the cargo before shipment and inserted the value in the bill of lading.  While by force of law COGSA's package limitation only applies to ocean carriers and cargo that is lost or damaged aboard a ship, the provision can be extended by contract to cover the inland portion of an intermodal ocean shipment contract, and further extended to cover subcontracting inland carriers.  *See Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.*, 717 F. Supp. 1307, 1310 (N.D. Ill. 1989).  However, to extend the $500 liability limit provided by COGSA inland and/or to third parties, "[s]uch a limitation of common law liability. . . must be clearly expressed.  A bill of lading containing such a limitation will be strictly construed against the parties whom it is claimed to benefit." *See Lucky-Goldstar Int'l. (Am.), Inc. v. S.S. California Mercury*, 750 F. Supp. 141, 145 (S.D.N.Y. 1990) (internal citation omitted).

Defendants argue that the Service Contract extends COGSA's package limitation both to cover Hyundai's inland carriage of the Cargo and Rail Defendants.  Defendants further argue that, because Corning did not declare the value of the Cargo in a bill of lading prior to shipment, each of Defendant's liability is limited to $12,000, or $500 times each of the 24 crates.[5]  Defendants have moved for partial summary judgment limiting each of Defendant's liability to $12,000.

CNA argues that the Service Contract neither extends the applicability of COGSA to inland carriage of the Cargo nor to Rail Defendants, thereby limiting Defendants' liability.  On the

---

bearing Bates Stamp numbers HMM00042 through HMM00051 is the applicable Bill of Lading incorporated into the Service Contract.

[5]CNA has not argued, and the court does not express an opinion here, whether the crates are "packages" under COGSA, or the relative merit of Defendants' $12,000 figure.

contrary, CNA argues that the Service Contract expressly obligates Hyundai "to indemnify" Corning fully for the losses claimed in this case. CNA has moved for partial summary judgment to strike Defendants' limitation of liability defenses.

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

It is undisputed that the Service Contract governs the claims in this action. It is also

-5-

undisputed that the Service Contract incorporates the terms of the Bill of Lading.  In turn, the Bill

of Lading incorporates the package limitation provision of COGSA § 4(5), 46 U.S.C. § 30701 note

(2006):

> Neither the carrier nor the ship shall in any event be or become liable for any loss or
> damage to or in connection with the transportation of goods in an amount exceeding
> $500 per package lawful money of the United States, or in case of goods not shipped
> in packages, per customary freight unit, or the equivalent of that sum in other
> currency, unless the nature and value of such goods have been declared by the
> shipper before shipment and inserted in the bill of lading. . .

It is undisputed that Rail Defendants are Subcontractors of Hyundai under the Service

Contract; and that Corning and Rail Defendants do not have privity of contract.

While Defendants argue that the Service Contract limits the liability of each Defendant to

$12,000, and CNA argues that the Service Contract entitles Corning to complete remuneration from

Hyundai, the court finds that, in this case, the Service Contract does not fix Defendants' liability on

an amount certain.

The Indemnification Clause of the Service Contract does not entitle Corning to full

remuneration from Hyundai for the loss of the Cargo, as CNA contends.  The Indemnification

Clause provides:

> 9. INDEMNIFICATION
> A. [Hyundai] shall indemnify and hold [Corning] harmless from any and all liability,
> expense (including reasonable attorney's fees), cause of action, suit, claim or
> judgment, including liability for injury to or death of any person or damage to
> property arising out of or attributable to the equipment furnished or services
> performed by [Hyundai], regardless of whether such equipment or services are
> furnished or performed by [Hyundai], its subcontractors or agents, or arising out of
> any breach of this Agreement by [Hyundai], its subcontractors or agents, unless such
> injury, death or damage results from the negligent acts or omissions of [Corning].
> *Plaintiff's Motion for Partial Summary Judgment*, *Ex. F*, Service Contract, CNA
> 00164.

CNA argues that this clause ought to be interpreted, in meaning and effect:

-6-

Hyundai shall compensate. . . Corning [for] any and all liability, expense. . . or damage to [the Cargo].

CNA argues that the Cargo is "property"; the damage suffered by Corning is a "liability" and an "expense"; and "[T]he plain, unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely 'to compensate.'" *Yang Ming v. Okamoto*, 259 F.3d 1086, 1092 (9th Cir. 2001). CNA urges the court to remember the doctrine of *contra proferentum* and construe any ambiguous contractual language against Hyundai, the drafter. CNA argues that the Indemnification Clause supersedes and prevails over any conflicting limitation in the Bill of Lading.

The court does not disagree that, by its own terms, the Service Contract controls conflicting terms in the Bill of Lading. *See Plaintiff's Motion for Partial Summary Judgment*, *Ex. F*, Service Contract, CNA 00166. Regardless, the court finds CNA's argument unpersuasive. In *Yang Ming*, the Ninth Circuit merely reiterated its holding in *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992), that an indemnitor's obligation to indemnify an indemnitee can extend beyond the reimbursement of third party claims. In *Atari*, the Court validated a clause in a corporate merger agreement providing for the indemnification of officers on one side of the merger for expenses incurred defending lawsuits brought against them by the other side. In *Yang Ming*, the Court gave effect to a clause in a bill of lading providing for the indemnification of a carrier by a shipper for ancillary expenses arising out of the misdescription of cargo. The holdings in *Yang Ming* and *Atari* do not support CNA's reading of the Indemnity Clause.

"In interpreting contract provisions, courts must attempt to identify the parties' intent as expressed in the contractual language." *Great White Fleet (US) Ltd. v. DSCV Transp., Inc.*, 2000 U.S. Dist. LEXIS 14501, *3 (S.D.N.Y. Oct. 5, 2000); *see also Litchmore v. Perez*, 851 N.Y.S.2d 70 (2007). The Indemnity Clause is unambiguous. It obligates Hyundai to make Corning whole for

-7-

any liability incurred inuring to the benefit of third parties.  The Indemnity Clause has no bearing on Hyundai's liability to Corning for the loss of the Cargo.

The Service Contract does not limit Defendants' liability for the loss of the Cargo, as Defendants so contend.  Defendants argue that the Subcontracting Clause of the Bill of Lading, which is incorporated into the Service Contract, expressly precludes Corning from bringing suit against Rail Defendants, who therefore cannot be held liable for the damage to the Cargo.

Alternatively, Defendants argue that the Subcontracting Clause extends the package limitation of COGSA to cover Rail Defendants, as well as Hyundai.

In relevant part, the Subcontracting Clause provides:

4.  SUBCONTRACTING;  EXEMPTIONS  AND  IMMUNITIES  OF SUBCONTRACTORS
(C) [Corning] warrants that no claim shall be made against any of [Hyundai's] Subcontractors or any Subcontractor's Subcontractor, except Carriers[6] where otherwise appropriate, that imposes or attempts to impose upon any of them or any vessel owned or operated by any of them any liability in connection with the Goods. If any such claim should nevertheless be made, [Corning] shall indemnify [Hyundai] against all consequences of claims by any Subcontractor against [Hyundai] relating to a claim by [Corning] against the Subcontractor.

(D) Without prejudice to the foregoing, in regard against a Subcontractor regarding handling, storage or carriage of the Goods, every such Subcontractor shall have the benefit of all provisions in this Bill of Lading as if such provisions were expressly for the Subcontractor's benefit. *Defendants' Motion for Summary Judgment*, *Ex. G*, Bill of Lading, HMM 00045.

Defendants argue that the terms of the Service Contract are clear that Corning can only

---

[6]As defined by the Bill of Lading, "Carrier" means the ship, her owner, demise charterer and does not include time charterer. *Defendants' Motion for Summary Judgment*, *Ex. G*, Bill of Lading, HMM 00043, 00044.

maintain an action against Hyundai.[7]  Insofar as the terms of the Service Contract are not binding against Corning as to Rail Defendants, Defendants' contention is false.  Corning and Rail Defendants are without contractual privity.  Corning warranted to Hyundai that it would not sue Hyundai's Subcontractors; Corning made no such warranty to Rail Defendants.

The Subcontracting Clause does not deprive Corning of its lawful right to sue Rail Defendants.  Rather, in the event that Corning brings suit against any of Hyundai's Subcontractors, the Clause obligates Corning to indemnify Hyundai for any resultant claims by any Subcontractor against Hyundai arising out of the same facts.  The Subcontracting Clause does not make Rail Defendants immune from suit.

Nor does the Subcontracting Clause extend COGSA's package limitation to cover Rail Defendants.  The Clause Paramount of the Bill of Lading extends the package limitation of COGSA "inland" only so far as it reaches to cover Goods whenever (and wherever) they are in the custody of Hyundai or Hyundai's Subcontractors who are also Carriers:

> 2. CLAUSE PARAMOUNT
> B. If this Bill of Lading covers Goods moving from ports of the United States in foreign trade. . . then carriage of such Goods shall be subject to the provisions of [COGSA], the terms of which shall be incorporated herein, *and the provisions of U.S. COGSA shall* (except as otherwise provided in this Bill of Lading) *govern throughout the time when the Goods are in the custody of the Carrier. Id.* at HMM 00044 (emphasis added).

The Bill of Lading delineates between the terms "Carrier" and "Subcontractor," defining each independently.  "Carrier" means the ship, her owner, demise charterer and does not include time charterer.  "Subcontractor" includes stevedores, longshoremen, lighterers, terminal operators,

---

[7]CNA points out that the language in Paragraph 4(C), "except Carriers where otherwise appropriate," indicates that some Subcontractors will also be Carriers subject to direct cargo claims.  However, that is not the case here; Rail Defendants are not "Carriers" under the Bill of Lading.

warehousemen, truckers, agents, and any person, corporation, or other legal entity that performs any of the Ocean Carrier's obligations under this Bill of Lading, and includes the Subcontractor's own Subcontractor.  *Id.*

Thus, when Goods are lost or damaged while not in the custody of the Carrier, COGSA limitations do not apply.  The Subcontracting Clause cannot extend a benefit to Subcontractors that the Bill of Lading does not provide.  The Bill of Lading does not provide for COGSA's package limitation for Hyundai's Subcontractors who are not also Carriers.  It is undisputed that Rail Defendants are "Subcontractors" but not "Carriers".  It is also undisputed that the Cargo was damaged while in the custody of one or both of the Rail Defendants.  Therefore, the package limitation of COGSA does not apply here because the Cargo was not in Hyundai's custody when it was damaged.  Defendants' liability is not limited by the terms of COGSA through the Bill of Lading, as incorporated into the Service Contract.

The Service Contract does not limit any of Defendant's liability for the damage to the Cargo to $12,000.  Accordingly, CNA's motion for partial summary judgment to strike Defendants' limitation of liability defenses will be granted.

CONCLUSION

Because the court finds that there are no genuine issues of material fact and plaintiff is entitled to partial summary judgment as a matter of law, plaintiff's motion to strike Defendants' limitation of liability defenses will be granted.  Defendants' motion will be denied.

A separate order will be entered herein this date in accordance with this opinion.