UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CNA INSURANCE COMPANY a/s/o CORNING, INC.                                     PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:07CV-141-S

HYUNDAI MERCHANT MARINE, CO., LTD., et al.                              DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on remand from the United States Court of Appeals for the Sixth Circuit for reconsideration of the question of prejudgment interest. *CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd.,* 747 F.3d 339, 376 (6th Cir. 2014). More particularly, the Court of Appeals stated:

> We necessarily remand this case for reconsideration of the question of prejudgment interest in light of the pertinent provisions of the Service Contract as applied to the present decision. We also direct the court's attention to *In re ClassicStar Mare Leasing Litigation*, 727 F.3d 473, 494-97 (6th Cir. 2013), which amplifies our current view of prejudgment interest.

747 F.3d at 376.

In addressing the directive of the Court of Appeals on remand, we must address the two parts of the order and their proper application.

This action as filed by CNA Insurance Company ("CNA") as subrogee of Corning, Inc. ("Corning") to recover the cost of a shipment of damaged glass shipped from Corning's facility in Harrodsburg, Kentucky, destined for Corning Display Technologies in Tainan, Taiwan. The shipment, traveling by truck and rail, arrived damaged at the Washington United Terminal and was never loaded onto a vessel for oversea transport, but rather was sent back to Harrodsburg. CNA paid

Corning $664,679.88 on the claim for the shipment which was declared a total loss. CNA, subrogated to the rights of Corning, filed suit in the Southern District of New York naming Norfolk Southern Railway Company ("Norfolk"), Burlington Northern Santa Fe Railway Company ("BNSF"), and Hyundai Merchant Marine Co., Ltd. ("Hyundai"). CNA claimed breach of the Service Agreement with Hyundai. Under the agreement, Corning agreed to ship and Hyundai agreed to carry cargo from certain locations in the United States to Asia. Corning dealt exclusively with Hyundai as the sole carrier for a through shipment, made a single payment to Hyundai, and had no role in selecting or contracting with any other carriers in the chain. CNA also asserted claims for bailment and negligence. CNA cited the Carmack Amendment, 49 U.S.C. § 11706, in the jurisdiction section of the complaint.

The case was transferred from New York to Kentucky. The case was ultimately tried to a jury under what was deemed to be one comprehensive Carmack Amendment cause of action. The jury found for CNA holding the three carriers jointly and severally liable for $498,509.91. This court denied the defendants' motions for judgment as a matter of law. The court declined to award prejudgment interest, but awarded post-judgment interest in accordance with 28 U.S.C. § 1961.

On appeal, the Court of Appeals reversed the judgment of this court in part. The court vacated the jury verdicts as against Norfolk and BNSF, and affirmed the judgment against Hyundai in the amount of $498,509.91. Additionally, the Court of Appeals found, contrary to the district court's ruling, that by failing to reimburse Corning for the cost of the damaged glass at the time of the accident, Hyundai had the use of Corning's (or CNA's) money during that time, and therefore the district court should "reconsider[ ] the question of prejudgment interest in light of the pertinent provisions of the Service Contract as applied in the present decision." 747 F.3d at 376.

After an extensive analysis of the issue, the Court of Appeals held that "the Carmack Amendment does not apply to the road or rail leg of an intermodal overseas export shipped under a single through bill of lading." 747 F.3d at 370. The court found that CNA's sole colorable cause of action was for breach of the Service Contract, a maritime contract governed by federal maritime law. 747 F.3d at 370; 371, n. 37. The court concluded that, as a matter of law, CNA could not maintain a breach of contract action against Norfolk or BNSF. 747 F.3d at 373.

The court found, however, that Corning and Hyundai contracted for Hyundai to be liable "to the extent to which [a road or rail carrier] would have been liable to [the shipper] if it had made a direct and separate contract with [the shipper]" for that carrier's portion of the journey. 747 F.3d at 374. The court noted that "Of course, if a road or rail carrier made a separate contract with the shipper for carriage, it would be subject to Carmack." *Id.* The court then stated:

> Based on the foregoing, we conclude as a matter of law and pursuant to the terms of the Service Contract, that CNA's claim for breach of contract by Hyundai for "damage caused during the handling, storage, or carriage of Goods by [Hyundai's] Subcontractor" – be it DHL, Norfolk Southern, BNSF, or TMBR – must be resolved under Carmack. Because the district court proceeded on the theory, which the jury later confirmed by its verdict, that the damage occurred while the cargo was in the custody of either Norfolk Southern or BNSF, the court was ultimately correct in its application of Carmack to determine Hyundai's liability and we can affirm this portion of the decision.

747 F.3d at 375.

Thus, reconsidering prejudgment interest in light of the pertinent provisions of the Service Contract, as we were directed to do, we will award prejudgment interest on this maritime contract claim. "Prejudgment interest on admiralty claims is generally allowed on claims for prejudgment economic harm 'as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment." *Borges v. Our Lady of the Sea*

*Corp.*, 935 F.2d 436 (1st Cir. 1991), *citing Miller v. Caterpillar Tractor Co.,* 733 F.2d 813, 823 (11th Cir. 1984). This decision is in keeping with the Court of Appeals' view that "[b]y failing to reimburse Corning for the cost of the damaged glass at the time of the accident (and thereby forcing Corning to file a claim with CNA), Hyundai did have the use of Corning's (or CNA's) money during that time." 747 F.3d at 375-76. Additionally, an award of prejudgment interest herein is in keeping with the equitable principles set forth in *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473 (6th Cir. 2013) to fully compensate CNA, without overcompensating the plaintiff or punishing the defendant. The Court of Appeals noted that our earlier rationale in denying prejudgment interest, that the Carmack Amendment does not specifically provide for the recovery of prejudgment interest, was insupportable in light of its finding that the Service Contract controls. 747 F.3d at 375. Thus, despite the fact that Hyundai's liability is ultimately determined under Carmack, the Court of Appeals has determined that the claim itself is one for breach of a maritime contract. Thus this court finds, in its discretion, that there is no disharmony in awarding prejudgment interest.

The court finds that the rate of interest specified in 28 U.S.C. § 1961 is appropriate in this case. The rate of prejudgment interest is discretionary with the court. *In re ClassicStar*, 727 F.3d at 494; *Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999). This maritime claim is governed by admiralty law which counsels that the court may be properly guided in the exercise of its discretion by the rate set out in 28 U.S.C. § 1961. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986); *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 (2d Cir. 2010)(applying th federal rate to judgments based on combined federal and state claims); *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 94 (2d Cir. 1972)(prejudgment interest governed by maritime rather than State law).[1]

---

[1] We find CNA's argument for application of the New York prejudgment interest statute to be without merit, and in any
(continued...)

For the reasons set forth herein, the court will award prejudgment interest from March 5, 2006, the date of loss,[2] at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment. A separate order and judgment will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

July 15, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[1](...continued)
event, an award at 9% under that statute would overcompensate the plaintiff. There is no rationale articulated for the alternative suggestion that the court apply Kentucky's 8% interest rate.

[2] The damage was discovered in Tacoma, Washington on March 5, 2006. Hyundai apparently concedes that prejudgment interest, if awarded, runs from the date of loss, and that date, for purposes of this motion, is March 5, 2006. It has not argued otherwise.